UNITED STATES v. BOPP et al.

(District Court, N. D. California, First Division. March 3, 1916.)

No. 5865.

1. CONSPIRACY ⌖43(1)—INDICTMENT.

Criminal Code (Act March 4, 1909, c. 321) § 37, 35 Stat. 1096 (Comp. St. 1913, § 10201) makes it an offense to conspire to commit any offense against the United States. Section 13 (Comp. St. 1913, § 10177) makes it an offense for any person within the territory or jurisdiction of the United States to begin or set on foot or provide or prepare the means for any military expedition or enterprise to be carried on from thence against the territory or dominions of any foreign prince with whom the United States are at peace. An indictment charged that defendants conspired to begin and set on foot and provide and prepare the means for certain military enterprises to be carried on against the territory of the king of Great Britain, and alleged that such enterprises were to be carried on against the Dominion of Canada and certain British steamships, and that it was the intention of the defendants to blow up, damage, and destroy certain railroad tunnels, railroads, bridges, trains, and ships engaged in transporting munitions of war to England, France, Russia, and Japan. *Held*, that the indictment was insufficient, as the charge that defendants conspired to set on foot or provide means for a military enterprise was a mere conclusion, and it did not charge a conspiracy to do any acts which would constitute a setting on foot of a military enterprise or a providing of means therefore, nor was it aided by the allegations as to defendants' intention, since an attempt to destroy such tunnels, etc., was not necessarily a military enterprise, especially as it was not even alleged that the purpose of such destruction was to prevent the transportation of munitions of war.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 84, 99; Dec. Dig. ⌖43(1).]

⌖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. INDICTMENT AND INFORMATION ☜93, 110(3)—REQUISITES AND SUFFICIENCY
   —FOLLOWING LANGUAGE OF STATUTE.
   Where the definition of an offense either by the common law or by
   statute includes generic terms, it is not sufficient for an indictment to
   charge the offense in such terms, and it must allege particulars.
   [Ed. Note.—For other cases, see Indictment and Information, Cent.
   Dig. §§ 266, 291–294; Dec. Dig. ☜93, 110(3).]

3. CONSPIRACY ☜43(1)—CRIMINAL PROSECUTIONS—INDICTMENT.
   While an indictment charging a conspiracy to commit an offense need
   not describe the offense which defendants conspired to commit with all
   the particularity required in an indictment charging its commission as a
   substantive offense, it does not follow that no particulars whatever need
   be given.
   [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 84, 99;
   Dec. Dig. ☜43(1).]

Franz Bopp and others were indicted for conspiracy. On demurrer
to the indictment. Demurrer sustained.

J. P. O'Brien, of San Francisco, Cal., for defendants Cornell and
Crowley.

George A. McGowan, of San Francisco, Cal., for defendant Von
Brincken.

Sullivan & Sullivan and Theo. J. Roche, all of San Francisco, Cal.,
for defendants Bopp and Von Schack.

DOOLING, District Judge. [1] The indictment herein charges
that:

"Franz Bopp, E. H. Von Schack, Wilhelm Von Brincken, J. F. Van Kool-
bergen, Margaret W. Cornell, Charles C. Crowley, and Louis J. Smith, here-
inafter called the defendants, heretofore, to wit, on or about the 1st day of
May in the year of our Lord 1915, at San Francisco, in the state and North-
ern district of California then and there being, did willfully, knowingly, un-
lawfully, wickedly, corruptly, and feloniously conspire, combine, confederate,
and agree together, and with divers other persons whose names are to the
grand jurors aforesaid unknown, to commit certain offenses against the Unit-
ed States; that is to say:

"They, the said Franz Bopp, E. H. Von Schack, Wilhelm Von Brincken, J.
F. Van Koolbergen, Margaret W. Cornell, Charles C. Crowley, and Louis J.
Smith, did, at the time and place aforesaid, willfully, unlawfully, knowingly,
wickedly, corruptly, and feloniously conspire, combine, confederate, and agree
together, and with divers other persons whose names are to the grand jurors
aforesaid unknown, to knowingly, willfully, unlawfully, and feloniously begin
and set on foot, and provide and prepare the means for, certain military en-
terprises to be carried on from within the territory and jurisdiction of the
United States against the territory and dominions of the king of the United
Kingdom of Great Britain and Ireland, a foreign prince with whom the
United States then were, ever since have been, and are now at peace, to wit:

"(1) Against the Dominion of Canada, the said Dominion of Canada being
then and there territory and dominion of the said king of the United King-
dom of Great Britain and Ireland, the intention of the said defendants, and
the design, the end, the aim, and the purpose of the said military enterprise
being:

"(a) To blow up, injure, damage, obstruct, and destroy at the Canadian
end thereof, and at a point within the said Dominion of Canada, by force
and arms, a certain railway tunnel belonging to the St. Clair Tunnel Com-
pany, which tunnel extends under the Detroit river from Port Huron, in
the state of Michigan, in the United States, to Sarnia, Ontario, in the Domin-
ion of Canada, the said tunnel constituting the right of way of the Grand

Trunk Railway Company of Canada, which said railway company was, during all of the times herein mentioned, transporting and engaged in the transportation in foreign commerce, through the said tunnel, of mules, horses, other munitions of war, and other articles of commerce, which were being transported, and were in course of transportation, from the United States to England, France, Russia, and Japan, all of which the said defendants, and each of them, during the times herein mentioned, well knew."

It proceeds then to aver that the intention of defendants, and the end, the aim, and the purpose of the said military enterprise was further to destroy various tunnels belonging to the Canadian Pacific Railway Company, which company was transporting in domestic and foreign commerce munitions of war destined for and in course of transportation to England, France, Russia, and Japan; to destroy by force of arms all railroads in Canada so engaged in transporting such munitions of war so destined; to destroy by force of arms all railroad trains carrying such munitions of war so destined; to destroy all railroad bridges and tunnels upon or through which such trains were being operated; and to destroy and sink by force of arms all ships, with their cargoes and crews, engaged in transporting from any Canadian port such munitions of war so in course of transportation, or consigned to or intended for Great Britain, France, Russia, Belgium, or Japan.

The indictment further avers that such military enterprise was also to be carried on against the British steamship Talthybius, the said ship being the territory and dominion of the king of Great Britain and Ireland, the design being to destroy and sink the same, with her cargo and crew, and that said ship was engaged in transporting from ports in United States and British Columbia munitions of war consigned and intended for Russia, Great Britain, France, Belgium, and Japan; and also against the British steamship Hazel Dollar, averred to be the territory and dominion of the said king, and also so engaged; and finally against any and all ships of British registry, owned by subjects of the said king and engaged as hereinbefore set out. The indictment then sets out various overt acts averred to have been committed in furtherance of such conspiracy and to effect and accomplish the objects thereof.

I have set forth in the words of the indictment all that is charged in reference to the formation of the conspiracy itself; the matters not fully stated herein being only the averments as to the intention of the defendants, and the aim, design and purpose of the "military enterprise" mentioned. The indictment is for a conspiracy·under section 37 of the Criminal Code of the United States, which provides:

"If two or more persons conspire * * * to commit any offense against the United States, * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned not more than two years, or both."

The offense which defendants are charged with having conspired to commit is that denounced by section 13 of the same Code, which is as follows:

"Whoever, within the territory or jurisdiction of the United States, begins, or sets on foot, or provides or prepares the means for, any military expedi-

tion or enterprise, to be carried on from thence against the territory or dominions of any foreign prince or state, or of any colony, district, or people, with whom the United States are at peace, shall be fined not more than three thousand dollars and imprisoned not more than three years."

Neither this statute nor any other declares what is meant therein by the words "military enterprise," nor what would be required to constitute such an enterprise, so that in giving effect to the statute the court must determine from other sources what Congress meant when it used these words. So far as the conspiracy itself which is charged in this indictment is concerned, it is stated in the language of the statute without amplification; that is to say, there is no statement that defendants conspired to do certain things which, if accomplished, would in the judgment of the pleader constitute the beginning or setting on foot or the preparing or providing means for a military enterprise, and upon the sufficiency of which things to constitute such offense the judgment of the court might be exercised.

[2] It is a settled rule of criminal pleading that where the definition of an offense, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same terms as in the definition; but it must state the species, it must descend to particulars, or as stated in United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135:

"In an indictment upon a statute, it is not sufficient to set forth the offense in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."

The sole charge against the defendants here is that they conspired "to begin and set on foot, and prepare and provide the means for certain military enterprises." This is the bald language of the statute; the mere conclusion of the pleader. But the particular things which they conspired to do are not stated—the things which, if in fact accomplished, would constitute the setting on foot or providing means for a military enterprise. What does the pleader understand the words "military enterprise" to mean? What in his judgment constitutes a military enterprise? The indictment gives neither the defendants nor the court any information in this regard, and the things that the pleader might regard as sufficient to warrant him in asserting that defendants conspired to set on foot or provide means for a military enterprise might in the judgment of the court fall far short of being the things intended by the statute. The language of the Supreme Court in United States v. Hess, 124 U. S. 486, 8 Sup. Ct. 573, 31 L. Ed. 516, seems to me peculiarly applicable to the present case:

"The statute upon which the indictment is founded only describes the general nature of the offense prohibited; and the indictment, in repeating its language, without averments disclosing the particulars of the alleged offense, states no matters upon which issue could be formed for submission to a jury."

The defendants are entitled to know the particular things which they are charged with having conspired to do, and the court, when the indictment is challenged, must also have this information, in order to be able definitely to say whether a conspiracy to do such particular

things is a conspiracy to set on foot or provide means for a military enterprise. The indictment here is not aided by the averments therein that the intention of defendants and the purpose of the enterprise was to destroy tunnels, railroads, bridges, trains, and ships which were engaged in the transportation of munitions of war. Such destruction is not necessarily aimed at the territory or dominions of the king of Great Britain, but might be directed only against the various companies owning such tunnels, railroads, bridges, trains and ships. And while such destruction might well be the aim of a military enterprise, it is not necessarily so, nor can it be said that every one who might undertake so to destroy or cripple railroads or ships was engaged in such an enterprise, even though munitions of war were transported by them. It is not even averred that the purpose of destroying the railroads and ships was to prevent the transportation of munitions of war, and the words "railroads or ships which were engaged in transporting munitions of war," without further averment, might well be mere words of description, having no relation to the motives of the defendants, and certainly not being sufficient to stamp every attempt to destroy such roads or ships as a military enterprise.

[3] I do not ignore the suggestion that in charging a conspiracy to commit an offense the offense so to be committed need not be set forth with all the particularity that might be required in an indictment charging its commission as a substantive offense; but this, if conceded, does not mean that no particulars whatever need be given. It would be an idle thing to go through a long trial upon this indictment, only to learn at the end of the trial that the facts established constituted no offense cognizable by this court.

The demurrer to the indictment will therefore be sustained.